UNITED STATES OF AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HUDSON and LISA HUDSON,

    Plaintiffs,

 -vs-

GENERAL MOTORS LLC,

    Defendant.

## **COMPLAINT – CLASS ACTION**

*Plaintiff is not aware of any related cases.*

1.    Plaintiffs Anthony Hudson and Lisa Hudson bring this action against defendant General Motors LLC ("GM") to secure redress for the conduct of defendant in selling and charging for collision sensors that are placed in such a manner that they cannot and do not function reliably.

2.    Defendant GM sells a convenience package for the 2013-2018 Chevrolet Cruze vehicle that includes a "side blind spot alert system."

3.    Defendant GM represents and warrants that the "side blind spot alert system" on the Chevrolet Cruze will reliably warn the driver if another vehicle is in the driver's blind spots on the right and left quarters of the vehicle.

4.    In fact, the placement of the "side blind spot alert system" sensors is such that they are easily rendered inoperable by rain, water on the pavement, or snow, all conditions commonly encountered.

5.    Plaintiffs allege violation of written and express warranties, fraud, and unfair and deceptive trade practices.

## PARTIES

6.    Plaintiffs Anthony Hudson and Lisa Hudson are citizens and residents of Michigan.

7.    Defendant GM is a limited liability company organized under Delaware law with its principal place of business at 300 Renaissance Center, Detroit, MI 48265.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(d) (Class Action Fairness Act).  There are over 100 proposed class members. The claims of the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.  Most members of the class are of diverse citizenship from defendant.

9.    Personal jurisdiction and venue are proper because defendant intentionally markets and sells its products within the state of Michigan and is located in

2

the state of Michigan.

## FACTS – GENERAL

10. Defendant GM, through its Chevrolet Division, manufacturers, markets and sells the Chevy Cruze vehicle.

11. The 2013-2018 Chevy Cruze has an optional "side blind spot alert system" which is supposed to alert drivers if there is a vehicle in the blind spots on their left or right quarters.

12. The "side blind spot alert system" is sold to purchasers, often as part of an Enhanced Safety Package.

13. Blind spot alert systems are a common safety feature. About 25% of cars sold in the United States have them.

14. GM advertises and sells its system because there is substantial demand for blind spot alert systems.

15. The statement by GM that the vehicle has a side blind spot alert system is a representation and warranty that the system is functional.  All persons who purchase the system, including as part of an Enhanced Safety Package, invariably and necessarily receive GM's representations that the system exists.

16. In fact, the sensors of the "side blind spot alert system" on the 2013 to 2018

3

Chevy Cruze are placed on the rear bumper in such a location that water and debris from the rear wheel wells is directed onto them.

17. Furthermore, the sensors and the relating wiring are poorly sealed, rendering them subject to damage by such water and debris.

18. As a result, the sensors are easily and frequently rendered inoperable by rain, water on the pavement, snow, or dirt, all conditions commonly encountered.

19. Purchasers of the "side blind spot alert system" on the 2013 to 2018 Chevy Cruze do not receive that which they bargained for.

20. The functioning of the "side blind spot alert system" is covered by GM's limited written warranty.

21. However, because the problem with the sensors is inherent in the design of the vehicle, GM does not and cannot make them function effectively when a vehicle is brought in for service.  If the sensor has been damaged, GM will replace it with a new sensor in the same problematic location.

22. Between January 2013 and January 2018, GM sold over 1.1 million Chevy Cruze vehicles in the United States.

23. About 25% of these had the optional  "side blind spot alert system".

24. The existence of the Enhanced Safety Package and the "side blind spot alert

system" was pointed out on the window sticker which GM affixed to each vehicle, describing what equipment the vehicle was equipped with.

25.    In all cases, the placement of the sensors was in the same location on the rear bumper, such that water and debris from the rear wheel wells is directed onto them.

26.    GM should have known that the sensors should be protected against water and debris directed from the rear wheel wells.

27.    GM rapidly acquired actual knowledge that the sensors were not so protected, as a result of complaints and warranty claims.

28.    GM continued promoting and selling the "side blind spot alert system" without making necessary corrections.

## FACTS RELATING TO PLAINTIFFS

29.    Plaintiffs Anthony Hudson and Lisa Hudson purchased a 2013 Chevy Cruze on September 14, 2013 from Denooyer Brothers, Inc., an authorized GM dealer in Kalamazoo, Michigan.

30.    The vehicle came with GM's standard limited written warranty, issued directly by GM to plaintiffs as the ultimate purchaser, and promising plaintiffs that GM would repair or replace defects for 3 years or 36,000 miles (whichever came first) on the car as a whole and 5 years or 100,000

miles for the powertrain.

31. The limited written warranty was part of the basis of the bargain.

32. Plaintiffs saw GM's representations that certain Chevy Cruzes had a "side blind spot alert system" and elected to purchase one purportedly equipped with it, paying the additional amount required ($790).

33. The existence of the Enhanced Safety Package and the "side blind zone alert" on the vehicle purchased by plaintiffs was pointed out on the window sticker which GM affixed to the vehicle, describing what equipment the vehicle was equipped with. (Exhibit A, attached, is a copy of the window sticker.)

34. The representation that plaintiffs' vehicle had a "side blind spot alert system" therefore became part of the basis of the bargain.

35. In 2015, within the period of the GM limited written warranty, the "side blind spot alert system" system malfunctioned.

36. Plaintiffs took the car to the GM dealer through which it was purchased. The dealer purported to repair the system under the warranty.

37. The car was at the dealer for about a month (May 27, 2015 through June 22, 2015), as parts were on back order.

38. The volume of problems with the "side blind spot alert system" was such as

6

to create such delay.

39.   The dealer was acting as agent of GM for the purpose of effecting repairs
      under GM's warranty.  GM contracts with  GM dealers to perform warranty
      repairs for it, and compensates them for doing so.

40.   The GM limited written warranty expressly extends to the future
      performance of the GM vehicle, for the periods specified in the warranty.

41.   The malfunctions ceased temporarily following the repairs.

42.   Shortly after the warranty expired, and within four years prior to the filing
      of this action, the malfunctioning of the "side blind spot alert system"
      resumed.  Furthermore, other electrical functions were affected.

43.   The repairs made under GM's limited written warranty by the dealer were
      not effective to solve the problem.

44.   Repairs to the "side blind spot alert system" and of electrical damage caused
      by its malfunctioning typically cost $1,000 or more.

45.   Plaintiffs would not have purchased the "side blind spot alert system,"
      would not have paid as much for it, or would have purchased another
      vehicle altogether, had they known of the problem.

## COUNT I  – BREACH OF LIMITED WRITTEN WARRANTY

46.   Plaintiffs incorporate paragraphs 1-45.

47. GM violated its limited written warranty when it purported to repair the "side blind spot alert system" but did not do so effectively.

48. Notice of breach was given to defendant when plaintiffs presented the vehicle for service and subsequently in writing.

## CLASS ALLEGATIONS

49. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiffs bring this claim on behalf of a class.

50. The class consists of all persons who purchased 2013-2018 Chevy Cruze vehicles equipped with the "side blind spot alert system" in the United States, who presented their vehicles to a GM dealer for service with respect to the system, where the vehicle was serviced for such problem under the GM limited written warranty.

51. Excluded from the class are defendant; any affiliate, parent, or subsidiary of defendant; any entity in which defendant has a controlling interest; any officer, director, or employee of defendant; any successor or assign of defendant; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

8

52.   There are numerous reports on the Internet of problems with the "side blind spot alert system," indicating that well over 40 persons presented their vehicles for service to GM dealers for such problem, within the warranty period.  The class is so numerous that joinder of all members is not practicable.

53.   There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

   a.   Whether the 2013-2018 Chevy Cruze is defectively designed in such a manner as to render the "side blind spot alert system" frequently inoperable.

   b.   Whether this violates express warranties;

   c.   Whether GM violated its limited written warranty when it purported to repair the "side blind spot alert system" without curing the problems with it;

   d.   Whether GM engaged in deceptive practices when it sold the "side blind spot alert system".

54.   Plaintiffs' claims are typical of those of the proposed class.  Plaintiffs' claims have the same legal and factual basis as the claims of the class

members.

55.    Plaintiffs will fairly and adequately represent the class.  There is no conflict of interest between the plaintiffs and the class members.  Plaintiffs have retained counsel competent and experienced in class action litigation, and intend to prosecute this action vigorously.

56.    This class action is superior to other available means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical.  Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members for the following relief:

  i.    Actual damages;

  ii.    Attorney's fees, litigation expenses and costs of suit (15 U.S.C.  §2310);

  iii.    Such other or further relief as the Court deems proper.

## COUNT II – BREACH OF EXPRESS WARRANTY

57.    Plaintiffs incorporate paragraphs 1-45.

58. The statement that a vehicle has a "side blind spot alert system" constitutes an express warranty that such system exists and functions. Uniform Commercial Code, §2-313; Mich. Comp. Laws §440.2313.

59. The limited written warranty necessarily incorporates GM's statements concerning the equipment with which a vehicle is provided, as otherwise one cannot determine what will be repaired or replaced.

60. The representation is not true.

61. Notice of breach was given to defendant when plaintiffs presented the vehicle for service and subsequently in writing.

## CLASS ALLEGATIONS

62. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiffs bring this claim on behalf of a class.

63. The class consists of all persons who purchased 2013-2018 Chevy Cruze vehicles equipped with the "side blind spot alert system" in the United States, except Louisiana and Puerto Rico.

64. Excluded from the class are defendant; any affiliate, parent, or subsidiary of defendant; any entity in which defendant has a controlling interest; any officer, director, or employee of defendant; any successor or assign of defendant; anyone employed by counsel for plaintiff in this action; and any

judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

65.    The class includes over 100,000 persons and is so numerous that joinder of all members is not practicable.

66.    There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

    a.    Whether the 2013-2018 Chevy Cruze is defectively designed in such a manner as to render the "side blind spot alert system" frequently inoperable.

    b.    Whether this violates express warranties;

    c.    Whether GM violated its limited written warranty when it purported to repair the "side blind spot alert system" without curing the problems with it;

    d.    Whether GM engaged in deceptive practices when it sold the "side blind spot alert system".

67.    Plaintiffs' claims are typical of those of the proposed class. Plaintiffs' claims have the same legal and factual basis as the claims of the class

members.

68.     Plaintiffs will fairly and adequately represent the class.  There is no conflict of interest between the plaintiffs and the class members.  Plaintiffs have retained counsel competent and experienced in class action litigation, and intend to prosecute this action vigorously.

69.    This class action is superior to other available means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical.  Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members for the following relief:

        i.     Actual damages;

        ii.    Costs;

        iii.   Such other or further relief as the Court deems proper.

## COUNT III  – FRAUD

70.    Plaintiffs incorporate paragraphs 1-47.

71.    GM represented to each person purchasing a Chevy Cruze purportedly

equipped with a "side blind spot alert system" that such feature existed and worked.

72. The representation is not true.

73. GM knew that such representation was not true, and could not be made good under its limited written warranty.

74. GM continued selling vehicles with that feature anyway.

## CLASS ALLEGATIONS

75. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiffs  bring this claim on behalf of  a class.

76. The class consists of all  persons who purchased 2013-2018 Chevy Cruze vehicles equipped with the "side blind spot alert system" in the United States.

77. Excluded from the class are defendant; any affiliate, parent, or subsidiary of defendant; any entity in which defendant has a controlling interest; any officer, director, or employee of defendant; any successor or assign of defendant; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

78.   The class includes over 100,000 persons and is so numerous that joinder of all members is not practicable.

79.   There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

   a.   Whether the 2013-2018 Chevy Cruze is defectively designed in such a manner as to render the "side blind spot alert system" frequently inoperable.

   b.   Whether the sale of the system notwithstanding this problem constitutes fraud.

80.   Plaintiffs' claims are typical of those of the proposed class.  Plaintiffs' claims have the same legal and factual basis as the claims of the class members.

81.    Plaintiffs will fairly and adequately represent the class.  There is no conflict of interest between the plaintiffs and the class members.  Plaintiffs have retained counsel competent and experienced in class action litigation, and intend to prosecute this action vigorously.

82.   This class action is superior to other available means for the fair and efficient adjudication of this dispute. While the individual injuries suffered

by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members for the following relief:

      i.    Actual damages;

      ii.   Costs;

      iii.  Such other or further relief as the Court deems proper.

## <u>COUNT IV – DECEPTIVE TRADE PRACTICES</u>

83. Plaintiffs incorporate paragraphs 1-47.

84. GM represented to each person purchasing a Chevy Cruze purportedly equipped with a "side blind spot alert system" that such feature existed and worked.

85. The representation is not true.

86. GM knew that such representation was not true, and could not be made good under its limited written warranty.

87. GM continued selling vehicles with that feature anyway.

88. GM thereby violated Mich. Comp. Laws §445.903 by:

16

a.   Representing that goods have characteristics, uses, and benefits that
they do not have;

b.   Failing to reveal a material fact, the omission of which tends to
mislead or deceive the consumer, and which fact could not reasonably
be known by the consumer.

c.   Failing to reveal facts that are material to the transaction in light of
representations of fact made in a positive manner.

## CLASS ALLEGATIONS

89.   Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiffs bring this claim on
behalf of a class.

90.   The class consists of all persons who purchased 2013-2018 Chevy Cruze
vehicles equipped with the "side blind spot alert system" while residing in
Michigan or from a dealer located in Michigan.

91.   Excluded from the class are defendant; any affiliate, parent, or subsidiary of
defendant; any entity in which defendant has a controlling interest; any
officer, director, or employee of defendant; any successor or assign of
defendant; anyone employed by counsel for plaintiff in this action; and any
judge to whom this case is assigned, his or her spouse, and all persons
within the third degree of relationship to them, as well as the spouses of

17

such persons.

92.    The class includes over 1,000 persons and is so numerous that joinder of all members is not practicable.

93.    There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

    a.    Whether the 2013-2018 Chevy Cruze is defectively designed in such a manner as to render the "side blind spot alert system" frequently inoperable.

    b.    Whether the sale of the system notwithstanding this problem constitutes an unfair or deceptive practice.

94.    Plaintiffs' claims are typical of those of the proposed class.  Plaintiffs' claims have the same legal and factual basis as the claims of the class members.

95.     Plaintiffs will fairly and adequately represent the class.  There is no conflict of interest between the plaintiffs and the class members.  Plaintiffs have retained counsel competent and experienced in class action litigation, and intend to prosecute this action vigorously.

96.    This class action is superior to other available means for the fair and

efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical.  Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members for the following relief:

i.      Actual damages;

ii.     Attorney's fees, litigation expenses and costs (Mich. Comp. Laws §445.911);

iii.    Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

/s/ Daniel G. Romano
Daniel G. Romano (P49117)
Romano Law PLLC
23880 Woodward Ave.
Pleasant Ridge, MI 48069-1133
(248) 750-0270
dromano@romanolawpllc.com

19

/s/Frank Melchoire
Frank Melchiore (P41238)
535 Central Avenue, Suite 306
St. Petersburg, FL 33701
(727) 822-5900
(727) 502-0277 (fax)
(727) 739-4412 (direct & vm)
lawfm10@gmail.com


/s/ Daniel A. Edelman
Daniel A. Edelman
Cathleen M. Combs
EDELMAN, COMBS, LATTURNER
&amp; GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Email: dedelman@edcombs.com


## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been

assigned to counsel.


/s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
&amp; GOODWIN, LLC
20 S. Clark Street, Suite 1500

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)